IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMIR FATIR,                            :
                                       :
              Plaintiff,               :
                                       :
       v.                              : Civil Action No. 18-1549-CFC
                                       :
CASEY PHELPS, et al.,                  :
                                       :
              Defendants.              :

---

Amir Fatir, James T. Vaughn Correctional Center, Smyrna, Delaware.   Pro Se Plaintiff.

Kenneth Lee-Kay Wan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendants Casey Phelps, James Scarborough, Jason Rash, and Marc Richman.

Dana Spring Monzo, Esquire, and Lindsey E. Imbrogno, Esquire, White & Williams, Wilmington, Delaware.   Counsel for Defendants Jefferson A. Fort, Irene Fuh, Matthew Wofford, and Connections Community Support Programs, Inc.

**<u>MEMORANDUM OPINION</u>**

March 4, 2021
Wilmington, Delaware

*Cohn F. Connolly*

**CONNOLLY, U.S. District Judge:**

Plaintiff Amir Fatir ("Plaintiff"), an inmate the James T. Vaughn Correctional

Center ("JTVCC") in Smyrna, Delaware, commenced this action on October 8, 2018,

pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.   (D.I. 2)

He appears *pro se* and was granted permission to proceed *in forma pauperis*.   The

Amended Complaint is the operative pleading.   (D.I. 13)   Before the Court are

Defendants' motions to dismiss,[1] and Plaintiff's motion for injunctive relief.   (D.I. 29, 33,

39)   The matters are fully briefed.

## I.    BACKGROUND

Counts 1 through 10 of the Amended Complaint raise medical needs claims

under the Eighth Amendment of the United States Constitution and Counts 11 through

13 raise retaliation claims under the First Amendment.   (D.I. 13 at 6-11)   The following

facts are taken from the Amended Complaint and assumed to be true for purposes of

deciding the pending motions.   *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59,

64 (3d Cir. 2008).

Plaintiff was seen by Connections on October 16, 2016, with numerous

complaints including shortness of breath and chest pains.   (D.I. 13 at 2)   At that time,

Nurse Assistant Fuh would not let Plaintiff see a doctor, nurse practitioner, or

---

[1] The medical defendants include Jefferson A. Fort ("Fort"), Irene Fuh ("Fuh"), Matthew
Wofford ("Wofford"), and Connections Community Support Program, Inc.
("Connections") (collectively "Medical Defendants").   Delaware Department of
Correction ("DOC") defendants include Casey Phelps ("Phelps"), James Scarborough
("Scarborough"), Jason Rash ("Rash"), and Marc Richman ("Richman") (collectively
"DOC Defendants").

registered nurse, and she did not conduct "an EKG or other heart attack diagnosis and treatment" despite Plaintiff's symptoms and his history of hypertension and high cholesterol.   (*Id.*)   Fuh advised Plaintiff that under Connection's policy, he was required to submit at least three sick call requests before he could see a medical provider other than a certified nurse assistant and, after the third sick call request, he might be scheduled to see a nurse practitioner.   (*Id.*)   Fuh told Plaintiff that he should not submit another sick call request for two weeks, and to submit the third sick call slip two weeks after that.   (*Id.* at 3)   Plaintiff complained about the sick call request policy and Fuh responded that she did not make the policy.   (*Id.*)   Fuh issued Plaintiff Tums® tablets and sent him back to his unit.   (*Id.*)

Plaintiff submitted a second sick call slip and saw Fuh on November 16, 2016. (*Id.*)   He presented with several symptoms including chest paint, shortness of breath and concerns he was suffering heart attacks.   (*Id.*)   Fuh again provided Plaintiff with Tums®.   (*Id.*)   Plaintiff did not see a doctor, nurse practitioner, or registered nurse and did not receive and EKG or an examination to determine whether he was experiencing a heart attack or had suffered a heart attack.   (*Id.*)

Plaintiff submitted a grievance on January 23, 2017 and was promised by Registered Nurse Fort[2]   that he would eventually see a provider but that Plaintiff "had to be patient."   (*Id.*)   Plaintiff submitted a sick call request on February 14, 2017, and was not given an appointment for the request.   (*Id.*).   Plaintiff suffered a massive heart

---

[2] Claim for Relief, Count 5 states that Fort "was empowered by the grievance policy to provide the necessary relief requested to resolve the matter."   (D.I. 13 at 8)

attack on February 17, 2017.   (*Id.*)   The nurse on duty instructed Plaintiff to submit another sick call request.   (*Id.*)   After the correction officer threatened to call the prison's watch commander, the Connections nurse allowed Plaintiff to go the prison infirmary.   (*Id.*)   At the infirmary Plaintiff was administered an EKG and the nurse practitioner authorized emergency transport of Plaintiff to Kent General Hospital.   (*Id.* at 4)   A stent was placed in one of Plaintiff's arteries and he underwent triple bypass heart surgery.   (*Id.*)   Plaintiff was released from the hospital and returned to the JTVCC infirmary on February 21, 2017.   (*Id.*)

On an unknown date, while being assisted by two nurses, Plaintiff injured his left ankle.[3]   (*Id.*)   On May 16, 2017, he was notified that an x-ray of the area was "not within normal limits."   (*Id.*)   To date, Connections and the Bureau of Prisons have refused to treat the ankle or inform Plaintiff of the exact nature of the injury.   (*Id.*)

On February 22, 2017, while in the infirmary, Plaintiff was informed that he had been fired from his prison job by Officer Phelps due to his medical condition and that Phelps had placed someone else in Plaintiff's single cell.   (*Id.*)   The JTVCC practice is to hold a job and cell for six weeks before removing an inmate who is incapacitated for medical reasons.   (*Id.*)

Plaintiff contacted Captain Bruce Burton ("Burton") who reinstated Plaintiff to his job and cell.   (*Id.* at 5)   Phelps threatened several members of the laundry work crew for allegedly telling Burton that Phelps had fired Plaintiff, and the laundry workers

---

[3] It is not clear if the injury occurred at the hospital in mid-February 2017 or at the JTVCC infirmary following Plaintiff's discharge from the hospital.

denied having written to Burton.   (*Id.*)   Two days later, Phelps threatened "to get Plaintiff" and told him the best scenario was to hope that Burton moved Phelps from Plaintiff's building "before I get around to you."   (*Id.*)   Phelps repeated the threat in the hallway, threatened Plaintiff "not to say a word" and threatened Plaintiff for "going over my head" and reporting Phelps to the deputy warden.   (*Id.*)   Plaintiff spoke to Burton about Phelps threats of retaliation.   (*Id.*)   Burton assured Plaintiff that he would prevent Phelps from taking any retaliatory actions.   (*Id.*)

On June 26, 2017, Phelps sent Officer Rash to shake down Plaintiff's cell.   (*Id.*) Following the search, Rash left the cell and returned with Phelps who told Plaintiff he was firing Plaintiff from his job because Rash found a Bic pen, a highlighter, and four yellow sticky notes.   (*Id.*)   Plaintiff responded that the items found did not break any rules and it was obvious that Phelps was making good his threat of retaliation.   (*Id.* at 6)   Phelps grinned and locked Plaintiff on the tier.   (*Id.*)   Plaintiff received a write-up, was fired from him job, and moved from minimum security to medium security even though DOC policy prohibits job removal due to a disciplinary write-up.   (*Id.*)

Plaintiff seeks compensatory and punitive damages as well as injunctive relief. (*Id.* at 11-13)   Medical Defendants and DOC Defendants move for dismissal.   (D.I. 29, 33)   On December 22, 2020, Plaintiff filed a motion for injunctive relief.   (D.I. 39)

## II.   LEGAL STANDARDS

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89,

4

94 (2007).   To state a claim upon which relief can be granted a complaint must contain

"a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).   Detailed factual allegations are not required, but the complaint

must set forth enough factual matter, accepted as true, to "state a claim to relief that is

plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A claim

is facially plausible when the factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.   *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).   "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*

When considering Rule 12(b)(6) motions to dismiss, the court must accept as true

all factual allegations in the complaint and view them in the light most favorable to Plaintiff.

*Umland v. Planco Fin. Servs.*, 542 F.3d at 64.   The Court, however, is "not bound to

accept as true a legal conclusion couched as a factual allegation."   *Papasan v. Allain*,

478 U.S. 265, 286 (1986) (citations omitted).

## III.   DISCUSSION

### A.   Medical Defendants

Medical Defendants seeks dismissal on the grounds that: (1) Wofford and Fort

lack the requisite personal involvement for liability; (2) the Amended Complaint does not

allege the requisite *mens rea* of Fuh for deliberate indifference to a serious medical

need; (3) the Eighth Amendment mandates the provision of adequate care not choice of

medical care; (4) Fuh cannot be responsible for a deliberate indifference claim against

Connections; (5) Connections did not create the policy complained of in the Amended

5

Complaint; (6) there can be no deliberate indifference claim against Fort in his capacity as grievance nurse; and (7) the Amended Complaint does not establish medical negligence.

### 1.    Personal Involvement

Medical Defendants move to dismiss all claims raised against Fort and Wofford for lack of personal involvement.    Counts 5, 6, 7, 8, and 9 are raised against Fort. Counts 2, 6, 7, 8, and 9 are raised against Wofford.

The Amended Complaint alleges that Fort was empowered by the grievance policy to provide the necessary relief requested to resolve the matter.    (D.I. 13 at 8) Plaintiff alleges that following his submission of a medical grievance on January 23, 2017, Fort failed to provide the relief requested and, instead, promised Plaintiff that he would eventually see a nurse practitioner and for Plaintiff to be patient.    (*Id.* at 3, Statement of Facts and at 8, Count 5)    There are no allegations raised against Wofford in the Statement of Facts, and he is only referred to in the Claims for Relief.

Plaintiff attempts to raise medical needs claims against Fort and Wofford despite the lack of allegations of their direct involvement in his medical care.    Deliberate indifference can be shown where prison authorities prevent an inmate from receiving a recommended treatment.    *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).    Courts are divided, however, on whether an official's review and denial of a grievance can establish personal involvement sufficient to state a medical needs claim.    *See e.g.*, *Mazza v. Austin*, 2018 WL 746409, at *9 (E.D. Cal. Feb. 7, 2018) (recommending denial of motion for summary judgment on plaintiff's claim

6

challenging medical decisions reached by defendants, both as members of the prison grievance committee and in directly assessing plaintiff's medical needs when reviewing plaintiff's appeal); *Battle v. Recktenwald*, 2016 WL 698145, at *10 (S.D.N.Y. Feb. 19, 2016) (agreeing that defendant's denial of an administrative grievance or a refusal to override the medical advice of medical personnel is insufficient to establish liability for an Eighth Amendment violation); *Ward v. Kentucky State Reformatory*, 2009 WL 2342724, at *5 (W.D. Ky. July 28, 2009) (holding that where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial of medical treatment); *Henry v. Wilson*, 2008 WL 131164, at *4-5 n.1 (W.D. Pa. Jan. 9, 2008) (noting that plaintiff cannot allege personal involvement by any defendant merely by virtue of his or her involvement in reviewing inmate grievances); *Madison v. Mazzuca*, 2004 WL 3037730, at *10 (S.D.N.Y. Dec. 30, 2004) (noting that personal involvement is present where a supervisor reviewed a prisoner's grievance with respect to a constitutional violation and decides against taking any corrective action).

The scant allegations here do not indicate whether Plaintiff's grievance was denied or whether he prevailed.    Nor is it clear whether he challenges the medical decisions reached by Fort in his role in assessing Plaintiff's medical needs when reviewing his grievance.    *See Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care.")    Finally, any references to Wofford are made in the Claims for Relief counts.    Those counts are not supported by the facts and are conclusory.    *See Iqbal*,

556 U.S. 678 (stating that a complaint will not suffice if it "offers [merely] 'labels and conclusions' " or " 'naked assertion [s]' devoid of 'further factual enhancement' ") (quoting *Twombly*, 550 U.S. at 555, 557).

As pleaded, the claims against Fort and Wofford fail to state claims upon which relief may be granted.   Therefore, the motion to dismiss the claims against them will be granted.   Plaintiff, however, will be given leave to amend the claims.

### 2.    Eighth Amendment

The Amended Complaint raises medical needs claims against Fuh in Counts 1, 4, 6, 7, 8, and 9 and against Connections in Counts 1 through 4 and 6 through 10. Plaintiff alleges that he suffered a heart attack on February 15, 2017, after Fuh refused to properly examine, failed to provide medical treatment, and did not provide an EKG or permit Plaintiff to see a doctor or nurse after he submitted a sick call slips and went to the prison infirmary.   The Amended Complaint alleges that Connections, along with Scarborough and Richman,[4] refused to provide treatment for Plaintiff's ankle injury and that Connections along with Scarborough, Richman, and Wofford wrote, developed, and enforced policies that prevented or delayed needed medical treatment.

To set forth a cognizable Eighth Amendment claim for inadequate medical care, a prisoner must allege (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to

---

[4] The claims against Scarborough and Richman are discussed below at III.B.1.

avoid the harm.   *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d

811 (1994).   Prison authorities, however, are "accorded considerable latitude in the

diagnosis and treatment of prisoners," *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.

1993), and "disagreement as to the proper medical treatment" does not give rise to a

constitutional violation, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

With respect to Fuh, the Amended Complaint fails to allege deliberate

indifference.   By Plaintiff's own allegations, Fuh provided him care on two occasions,

providing, for example, medication.   Even if this type of treatment was negligent, an

issue not decided by the Court, medical negligence without accompanying deliberate

indifference does not rise to the level of a constitutional violation.   *See Estelle*, 429

U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating

a medical condition does not state a valid claim of medical mistreatment under the

Eighth Amendment.").   There are no allegations that Fuh provided treatment to Plaintiff

other than those two occasions.   Instead, Plaintiff complains that he did not see the

medical provider of his choice and he disagreed with the treatment provided him by

Fuh.   The Court will grant the motion to dismiss the claims against Fuh.

Plaintiff also argues that Connections, the DOC's former contract healthcare

provider, and other defendants as discussed above, maintained a policy that

demonstrated deliberate indifference to his medical needs.   Specifically, Plaintiff claims

that the policy requiring the submission of "sick-call slips" prior to receiving treatment

delayed or denied him treatment.

"[A] private health company providing services to inmates 'cannot be held

responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cty. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference.[5] *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992).   However, because there has been no underlying constitutional violation by the individuals associated with Connections, its policy cannot be a basis for liability.   *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d at 584 ("In order for [a private healthcare provider] to be liable, the [plaintiff] must provide evidence that there was a relevant [provider] policy or custom, and that the policy caused the constitutional violation they allege.").   Therefore, the Court will grant the motion to dismiss the claims against Connections.

Because it is possible that Plaintiff may be able to cure his pleading defects, he will be given leave to amend the Eighth Amendment medical needs claims.

### 3.   Medical Negligence

Medical Defendants move to dismiss all medical negligence claims to the extent

---

[5] Plaintiff alleges that he injured his ankle in 2017, complained about the injury, and an x-ray was taken that was "not within normal limits".   (D.I. 13 at 4 and at 9-1, Count 10) Plaintiff alleges Connections either refused to treat the injury or to inform him of the exact nature of the injury.   The Amended Complaint does not identify the Connections employee allegedly responsible for refusing to treat Plaintiff or refusing to inform him of the nature of the injury.   Connections, as a contract healthcare provider, may not be held liable for the conduct of its employees absent allegations of a policy or custom that demonstrates deliberate indifference and the Amended Complaint does not identify a custom or policy with regard to the 2017 ankle injury.

it is Plaintiff's intent to raise negligence claims.   In Delaware, medical negligence is

governed by the Delaware Health Care Negligence Insurance and Litigation Act.   *See*

18 Del. C. §§ 6801-6865.   When a party alleges medical negligence, Delaware law

requires the party to produce an affidavit of merit with expert medical testimony

detailing: (1) the applicable standard of care, (2) the alleged deviation from that

standard, and (3) the causal link between the deviation and the alleged injury.

*Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green*

*v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 Del. C. §

6853.   To extent Plaintiff alleges medical negligence, at the time he filed the Amended

Complaint he was required to submit an affidavit of merit as to each defendant signed

by an expert witness.   18 Del. C. § 6853(a)(1).   He did not.

The Court will grant Medical Defendants' motion to dismiss the medical

negligence claims.

### B.   DOC Defendants

DOC Defendants seek dismissal on the grounds that:   (1) Plaintiff failed to

exhaust his administrative remedies as is required under the Prison Litigation Reform

Act; (2) claims that occurred prior to June 3, 2017 are barred by the two-year statute of

limitation period; and (3) Scarborough and Richman lack the requisite personal

involvement for liability.

#### 1.   Personal Involvement

DOC Defendants move to dismiss all claims against Scarborough and Richman

for the failure to plead their personal involvement.   Counts 2, 6, 7, 8, 9, and 10 are

11

raised against Scarborough and Richman.   There are no allegations raised against Scarborough and Richman in the Statement of Facts.   They are only referred to in the Claims for Relief counts.

As alleged, Scarborough and Richman hold supervisory positions with the DOC. There is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).   Liability under 42 U.S.C. § 1983 requires a showing that each defendant was personally involved in the alleged wrongdoing.   *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).   "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."   *Id*.   And, a defendant's knowledge of a risk to health and safety "can be proved indirectly by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk."   *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).   However, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."   *Spruill v. Gillis*, 372 F.3d at 236 (discussing *Durmer v. O'Carroll*, 991 F.2d at 69).   "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."   *Id*. at 236.   Finally, as discussed, any references to Scarborough and Richman are made in the counts in the Claims for Relief and those counts are not supported by the facts and are conclusory.

The Amended Complaint fails to state claims against Scarborough and Richman. To the extent Scarborough and Richman are named as defendants based upon their supervisory positions, the claims fail.   Moreover, the Amended Complaint fails to allege any personal involvement by either defendant.   Accordingly, DOC Defendants' motion to dismiss the claims against Scarborough and Richman will be granted.   The Court finds amendment futile as to the claims against Scarborough and Richman.

### 2.   Administrative Remedies

DOC Defendants argue the Amended Complaint should be dismissed for Plaintiff's failure to exhaust his administrative remedies.   Having dismissed the claims against Scarborough and Richman, the Court addresses the exhaustion issue only as it relates to Phelps and Rash.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a); see *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The PLRA requires "proper exhaustion," meaning exhaustion of those administrative remedies that are "available."   *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint.

13

*Jones v. Bock*, 549 U.S. 199 (2007); *West v. Emig*, 787 F. App'x 812, 814) (3d Cir. 2019); *see also Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.").   Failure to exhaust administrative remedies must be pled and proved by the defendant.   *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Exhaustion applies only when administrative remedies are "available."   *See Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850 (2016).   Administrative remedies are not available when the procedure "operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   *Id.* at 1859-60.   "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies."   *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies.").   "When an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion.'"   *Id.* (quoting *Ross*, 136 S. Ct. at 1859).

Plaintiff submitted two grievances; Grievance No. 372821 submitted June 23, 2017 and Grievance No. 378276 submitted August 22, 2017.   (D.I. 33-3 at 2-7)   DOC

14

Defendants argue that Plaintiff did not exhaust his administrative remedies in connection with any claims arising from the June 16, 2017 shakedown because he did not follow proper protocols and failed to complete the appeals process for any grievance.   They also argue and there is no evidence supporting Plaintiff's assertion that he did.   They contend that the August 22, 2017 grievance was untimely as it was not submitted within seven days of the incident.

Inmate Grievance Policy No. 4.4 provides that "[g]rievances can be returned unprocessed if they . . . were filed after the expiration of the applicable filing time period" or "are merely requests for information or services that may be obtained by other means."   (D.I. 33-2 at ¶ VI.13.)   The non-emergency grievance resolution consists of three steps.   (See id. at ¶ VII.)   Step one provides for informal resolution.   At step two the resident grievance committee/subject matter expert panel makes a recommendation to the warden who then make a decision based upon the recommendation which may be appealed.   Upon appeal, at step three, the bureau grievance officer makes a recommendation to the bureau chief who accepts or rejects a recommendation.   The bureau chief's decision is final.

The June 23, 2017 grievance complains of retaliation by Phelps and the cell shakedown by Rash.   (D.I. 33-3 at 2)   The August 22, 2017 grievance complains that Plaintiff was fired by in violation of DOC Policy 4.2.   (Id. at 5)   Both grievances were returned unprocessed.   The August 22, 2017 grievance was not returned as untimely. Both grievances were returned as requests.   (Id. at 3, 6)

The June 23, 2017 grievance was also marked "staff investigation" and "others."

15

(*Id.* at 3)   Both paragraphs indicate that when an inmate requests an investigation of staff, the inmate should write to the unit commander, followed by an appeal to the operations superintendent and then the warden.   The June 23, 2017 grievance indicate that a copy of the grievance would be sent to Burton and that if Plaintiff did not receive a response or was dissatisfied with the response, he could appear to the operations superintendent and then to the warden.   (*Id.* at 4)   In support of his position that he exhausted his administrative remedies Plaintiff provided the following:   An August 2, 2017 letter to Warden Metzger seeking a staff investigation of the action of Phelps and Rash, as well as Unit Commander Burton; an August 8, 2017 memo from Deputy Warden Parker acknowledging receipt of the letter;[6] an October 18, 2017 letter to Warden Metzger written on Plaintiff's behalf by his attorney that refers to the shakedown by Rash, the resulting charges, and Plaintiff's belief this was a result of a grudge by Phelps; and an April 17, 2018 follow-up letter to Warden Metzger written on Plaintiff's behalf by his attorney, that states, "In your November 30, 2017 response to our letter, you stated that you would 'investigate the claims made by inmate Fatir and will take any necessary actions accordingly.'"   (D.I. 37 at 15, 17-19, 25; D.I. 37-1 at 4-13)   For the August 22, 2017 grievance, under "Others," Plaintiff was told to talk to the person completing the disciplinary hearing about his job and to write his counselor to see what job opportunities are available.   (D.I. 33-3 at 6-7)

Neither grievance is governed by the three grievance resolution steps in Policy No. 4.4 as they were considered "merely requests for services."   In addition, the record

---

[6] Defendants argue it is not clear what letter is referred to in the memo.   (D.I. 38 at 2).

reflects that with regard to June 23, 2017 grievance, as directed, Plaintiff, as well as his attorney, contacted the warden regarding the action of Phelps and Rash.[7]   The record is silent on whether Plaintiff contacted prison personnel regarding reinstatement to his position.   Moreover, the August 22, 2017 grievance makes no mention of appeal rights.

Our District Court has previously noted that the "return of unprocessed grievance" instructions in use at JTVCC are "confusing at best."   *See Rahim, v. Holden*, 882 F. Supp. 2d 638, 643 (D. Del. 2012).   Here, the June 23, 2017 grievance indicated the steps for Plaintiff to take and the record reflects he took those steps.   As to the August 22, 2017 grievance, Plaintiff was provided no guidance for appealing any decisions.   If the DOC requires inmates to administratively exhaust grievances returned as "unprocessed" then prison policy should indicate the process to exhaust unprocessed grievances.   The Court will deny the motion to dismiss on the grounds that Plaintiff failed to exhaust his administrative remedies as to the claims raised against Phelps and Rash.

### 3.    Statute of Limitations

DOC Defendants move to dismiss claims based upon actions that occurred prior to June 3, 2017 as time-barred.   Section 1983 has no statute of limitations of its own. *Randall v. City of Philadelphia Law Dep't*, 919 F.3d 196, 199 (3d Cir. 2019) (citing 42 U.S.C. § 1983).   Rather, it borrows the underlying state's statute of limitations for personal-injury torts.   *Id.*   (citing *Wallace v. Kato*, 549 U.S. 384, 387,(2007).   In

---

[7] Plaintiff's letter to Warden Metzger makes clear that the reason he contacted him first, and not Unit Commander Burton, was because he sought an investigation of Burton in addition to Phelps and Rash.   (D.I. 37-1 at 4)

Delaware, that period is two years.   *Day v. Toner*, 530 F. App'x 118, 121 (3d Cir. 2013) (citing 10 Del. C. § 8119).

The Court has dismissed the claims against Scarborough and Richman.   The claims against Phelps and Rash and not barred by the two-year limitation period and do not fall within the ambit of DOC Defendants' motion to dismiss.

## IV.   INJUNCTIVE RELIEF

Plaintiff asks the Court to issue an injunction ordering Defendants to transport him to see his cardiologist, pulmonologist, and urologist.   (D.I. 29)   Defendants oppose.   (D.I. 40, 41, 44)

Plaintiff states that following his triple bypass surgery he was placed under the care of a cardiologist and he was also referred to a pulmonologist and urologist.   (D.I. 39 at 1-2)   Plaintiff states that "in a cost-savings gimmick before COVID-19 restrictions, Defendants cancelled most specialist consults" at JTVCC and "all of them for Plaintiff." (*Id.* at 2)   Plaintiff states that he is experiencing the same symptoms ignored prior to his 2017 heart attack and has been blocked from seeing a cardiologist for over a year and the other two specialists for nearly as long.   (*Id.* at 2)   Plaintiff asks the Court to order Defendants to schedule consults with his specialists, transfer Plaintiff to the appointments or, in the alternative, to order his release before his death is caused due to "incompetence, indifference, and penny-pinching."   (*Id.* at 3)

Medical Defendants ask the Court to take judicial notice that Connections is no longer the contract medical provider for the DOC and, therefore, has no power to provide Plaintiff with medical treatment.   (D.I. 40)   DOC Defendants ask the Court to

18

deny on the grounds that Plaintiff impermissibly seeks injunctive relief for conduct not contained in his Amended Complaint.   (D.I. 41)   They further argue that Plaintiff has failed to meet his burden to prove injunctive relief is warranted.

A preliminary injunction is "an extraordinary remedy that should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("NutraSweet II").   The elements also apply to temporary restraining orders.   *See NutriSweet Co. v. Vit-Mar Enterprises., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997) ("NutraSweet I") (a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions).   "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *NutraSweet II*, 176 F.3d at 153.   Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution.   *Rush v. Correctional Med. Services, Inc.*, 287 F. App'x 142, 144 (3d Cir. 2008) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

A party pursuing injunctive relief is confined to arguing the merits of his or her complaint.   *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (explaining plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint"); *Martin v. Keitel*, 205 F. App'x 925,

19

928-29 (3d Cir. 2006) (injunctive relief motion was "legally deficient" because it targeted conduct that bore no relation to plaintiff's underlying claim); *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005) ("to obtain a permanent injunction, a party must show . . . that he has prevailed in establishing the violation of the right asserted in his complaint"); *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (rejecting injunctive relief motion that raised new assertions that were entirely different from the claim raised in the complaint because "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint").

District courts routinely apply this proposition of law to deny conduct of the sort attempted here.   *See, e.g., Peace and Freedom Party v. Bowen*, 2012 WL 1455248, at *7 (E.D. Cal. Apr. 26, 2012) ("Since Plaintiffs' complaint does not include a procedural due process claim that Defendant acted pursuant to unconstitutionally vague authority, such an argument cannot support an award of injunctive relief.   Therefore, the merits of this argument need not be addressed."); *Shannon v. Williams*, 2012 WL 1657526, at *1 (D. Minn. Apr. 20, 2012) (denying injunctive relief motion based on assertions different from those in the complaint); *Carrea v. Iserman*, 2011 WL 4527407, at *2-3 (E.D. Cal. Sept. 27, 2011) (rejecting claims unrelated to complaint as grounds for injunctive relief); *Guinther v. Banks*, 2010 WL 5173 691, at *2 (E.D. Ark. Dec. 1, 2010) (denying

20

injunctive relief motion because "[t]he alleged constitutional violations Plaintiff has raised in his motion for a preliminary injunction have no relationship, whatsoever, to the claim he has raised in this lawsuit"); *Cincoski v. Richard*, 2010 WL 31726, at *3 (E.D. Ark. Jan.4, 2010) ("Plaintiff's grounds for seeking a preliminary injunction have no nexus to the underlying conduct giving rise to the claims asserted in his Complaint. Therefore, Plaintiff's requests for preliminary injunctive relief should be denied."); *Guillen v. Thompson*, 2009 WL 2513501, at *6–7 (D. Ariz. Aug.14, 2009) (denying preliminary injunction based on claims not raised in the complaint); *Pamer v. California Dep't of Corr.*, 2007 WL 2778913, 11 (N.D. Cal. Sept.21, 2007) (explaining that "[i]njunctive relief is improper because the proposed TRO/preliminary injunction does not pertain to the issues as framed by the second amended complaint").

Plaintiff's motion is "legally deficient."   While the Amended Complaint raises medical needs claims, those claims concern Plaintiff's disagreement with the medical care provided by Fuh on two occasions, an ankle injury, and sick call request policy. The Amended Complaint refers to Plaintiff's heart attack and heart surgery by his cardiologist.   However, it makes no mentions of outside referrals to any specialist, cancelled appointments, or cost saving measures.   The issue in this instant motion is different from those raised in the Amended Complaint.   And, the Court agrees with DOC Defendants' position that Plaintiff failed to meet his burden to show that injunctive relief is warranted.

In addition, Connections is no longer the healthcare provider for the DOC, having been replaced by Centurion on April 1, 2020.   Plaintiff argues that even though

21

Connections is no longer the medical provider, when Centurion became the medical provider all Connections employees remained in their same positions.   Regardless, Connection is no longer the contract healthcare provider for the DOC.   Plaintiff's motion for injunctive relief will be denied as he is unlikely to suffer any more alleged harm from Connections or its personnel.   See *Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983) and *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974).

Plaintiff's motion for injunctive relief will be denied.

## V.   CONCLUSION

For the above reasons, the Court will:   (1) grant Medical Defendants' motion to dismiss (D.I. 29); (2) grant in part and deny in part Department of Corrections Defendants' motion to dismiss (D.I. 33); (3) dismiss all claims against Scarborough and Richman; and (4) deny Plaintiff's motion for injunctive relief (D.I. 39).   Plaintiff will given leave to amend the Eighth Amendment medical claims under 42 U.S.C. § 1983 against Medical Defendants.   Should Plaintiff fail to amend, the matter will proceed on the retaliation claims raised against Phelps and Rash in the Amended Complaint.

An appropriate order will be entered.