IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMIR FATIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1549-CFC-EGT |
| | ) | |
| CASEY PHELPS et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Presently before the Court is the motion of Defendants Casey Phelps and Jason Rash ("State Defendants") for summary judgment.  (D.I. 236).  Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*.  (D.I. 4).  For the reasons set forth below, the Court recommends that State Defendants' motion be GRANTED.

## I.    BACKGROUND

Plaintiff Amir Fatir ("Plaintiff"), a prolific *pro se* litigant, is a sentenced inmate at the James T. Vaughn Correctional Center ("JTVCC").  State Defendants are employees of the Delaware Department of Corrections.  (SOF ¶¶ 2 & 3).[1]  Defendant Phelps is currently a sergeant at JTVCC, and Defendant Rash was previously an officer at JTVCC.  (*Id.*; Rash Decl. ¶ 2).  At all times relevant to this action, Defendant Phelps was responsible for the F-Tier building and for supervising the officers working in that building, including Defendant Rash.  (D.I. 237 at 8).

From 2013 to 2017, Plaintiff worked as Head Laundry Man at JTVCC.  (SOF ¶ 6; Fatir Dep. at 16:21-17:19).  Based on his tenure in the role, Plaintiff held a single-cell assignment in the

---

[1]    State Defendants' Concise Statement of Facts is cited herein as "SOF."  (*See* D.I. 237-1). Plaintiff's deposition transcript, dated August 2, 2022, is cited herein as "Fatir Dep." (D.I. 197 at A001-46).    Plaintiff's JTVCC Disciplinary Report is cited herein as "Disciplinary Report."  (*Id*. at A048-56).  Lastly, Defendant Rash's Declaration is cited herein as "Rash Decl."  (*Id*. at A058-60).

F-Tier building.  (SOF ¶ 12; Fatir Dep. at 7:2-6, 21:12-22:20).  In February 2017, Plaintiff suffered a heart attack, was hospitalized and ultimately placed in the JTVCC infirmary after being released from the hospital.  (SOF ¶¶ 10-11; Fatir Dep. at 5:13-6:13).  While in the infirmary, Plaintiff heard a rumor from another inmate that Defendant Phelps fired Plaintiff from his laundry job.  (SOF ¶ 12; Fatir Dep. at 11:18-13:14).  Defendant Phelps denies that he fired Plaintiff.  (SOF ¶ 13; D.I. 88 ¶ 23).

Although Plaintiff's memory is admittedly poor (Fatir Dep. at 72:1-73:10 & 74:9-75:16), Plaintiff heard a rumor sometime in February 2017 that certain unnamed laundry workers complained to Captain Burton about Plaintiff's supposed firing.  (SOF ¶ 14; Fatir Dep. at 12:16-14:6).  Plaintiff further believes that his close friend Pamela Rainey may have also contacted Captain Burton regarding the supposed firing.  (SOF ¶¶ 16-18; Fatir Dep. at 72:1-73:24).  Plaintiff claims that Captain Burton then reinstated his job and single-cell assignment.  (D.I. 68 at 8).  In February or March 2017, Plaintiff was moved from the infirmary to the D-Tier building for one or two months, where he did not work because he was on medical leave.  (SOF ¶¶ 21-22; Fatir Dep. at 39:6-39:23).  Sometime around then, Plaintiff claims that he spoke with Sergeant Maureen Demby, the relief sergeant on Defendant Phelps's days off, regarding his reinstatement as Head Laundry Man.  (Fatir Dep. at 53:5-54:11; D.I. 68 at 8).  According to Plaintiff, Sergeant Demby contacted Deputy Warden Scarborough, the latter of whom confirmed that Plaintiff was cleared to be moved back to his single-cell assignment on F-Tier and reinstated as Head Laundry Man as soon as he was cleared from medical.  (Fatir Dep. at 53:5-54:11; D.I. 68 at 8).

Important to this action, Plaintiff claims that while he was still in the D-Tier building, Defendant Phelps woke him up in his cell and stated, "you and [Sergeant] Demby are on my shit list" because "you went over my head and called the deputy warden."  (SOF ¶ 20; Fatir Dep. at

2

54:12-58:9). Although Plaintiff is unsure of what was said, Plaintiff maintains that Defendant Phelps threatened him in some way. (SOF ¶ 19; Fatir Dep. at 74:9-75:13). Defendant Phelps denies that such interaction ever occurred. (D.I. 88 ¶ 5). Sometime in May or June 2017, Plaintiff was then moved back to his single-cell assignment in the F-Tier building. (SOF ¶ 23; Fatir Dep. at 40:11-19).

On June 16, 2017, Defendant Rash conducted a search of Plaintiff's prison cell. (SOF ¶ 24; Disciplinary Report at A052). State Defendants maintain that Defendant Rash's selection of Plaintiff's cell was random and that Defendant Phelps did not direct Defendant Rash in any way to search Plaintiff's cell. (D.I. 88 ¶ 6; D.I. 90 ¶ 15; Rash Decl. ¶¶ 3-5). In Plaintiff's cell, Defendant Rash found non-dangerous contraband items, including a yellow highlighter, a red BIC pen and four sticky notes. (SOF ¶ 24; Disciplinary Report at A052; Rash Decl. ¶ 6). Plaintiff initially claimed that he obtained the highlighter during his 2005 incarceration in Arizona. (Disciplinary Report at A048-9). The items, however, were not listed in Plaintiff's personal property form from April 2017, appeared relatively new and were available to Plaintiff in his job. (SOF ¶¶ 26 & 34; Disciplinary Report at A048; Fatir Dep. at 78:9-24). Plaintiff was then terminated from his position as Head Laundry Man and written up for possession of the contraband items and for lying. (SOF ¶ 34; Disciplinary Report at A052-3; Fatir Dep. at 41:5-42:1).

The JTVCC thereafter held a disciplinary hearing regarding Plaintiff's alleged misconduct on June 22, 2017. (Disciplinary Report at A048-9). After receiving statements from Plaintiff and several others, the JTVCC found Plaintiff guilty for violations of Receiving Stolen Property, Failing to Obey an Order, Lying and Possession of Non-Dangerous Contraband. (*Id*. at A049). Plaintiff appealed, contending that the search was retaliatory, but the decision was affirmed. (*Id*.

at A051 ("Inmates claim that the write up is retaliatory but no evidence as to why it was retaliatory was given. so sanctions stand.")).

Plaintiff filed the original Complaint in this action on October 8, 2018 (D.I. 2), asserting 75 counts against 25 defendants. (*See* D.I. 8 at 1 ("Distilled, the Complaint raises medical needs (*id.* at Counts 1-11), retaliation (*id.* at Counts 12-18), due process (*id.* at Counts 19-56, 65), housing and classification (*id.* at Counts 57-64, 66-72), and conditions of confinement (*id.* at Counts 73-75) claims.")). After various dismissals and service orders, Plaintiff filed the operative Second Amended Complaint on February 28, 2022, alleging under 42 U.S.C. § 1983 that State Defendants unconstitutionally retaliated against Plaintiff for exercising his First Amendment rights. (D.I. 68).[2] Discovery ensued (and closed). (D.I. 178).

State Defendants filed the present motion for summary judgment on November 14, 2025. (D.I. 236; D.I. 237). Plaintiff declined to file a cross-motion for summary judgment. (D.I. 245). State Defendants' motion has been fully briefed. (D.I. 241; D.I. 247).

## II.    **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 n.10 (1986). An assertion that a fact is not genuinely disputed must be supported by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information,

---

[2]    The Second Amended Complaint also contains separate § 1983 claims against Defendants Irene Fuh and Matthew Wofford ("the Medical Defendants"), which have been stayed since April 19, 2021 pursuant to Section 362(a) of the Bankruptcy Code. (*See* D.I. 59).

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the non-movant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III.    DISCUSSION

The only claim asserted against the State Defendants is retaliation under the First Amendment.    State Defendants argue that summary judgment is appropriate with respect to Plaintiff's retaliation claim because (1) Plaintiff did not engage in a constitutionally protected activity, (2) Plaintiff's alleged protected activity was not a substantial or motivating factor in the prison official's decision to discipline him and (2) even if the prison officials' decision to discipline him was retaliatory, Plaintiff's misconduct was so clear and overt such that there is no genuine issue of material fact that the officials' actions were reasonably related to legitimate penological interests.  (D.I. 237; D.I. 247).  In response, Plaintiff did not expressly address any of Plaintiff's arguments but instead recited a long list of perceived genuine issues of material fact.  (D.I. 241).[3]

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under Section 1983."  *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990); *see also Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) (noting that it has "long been clearly established" that the First Amendment bars retaliation for protected speech). To prevail on a retaliation claim against prison officials under § 1983, a prisoner "must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him."  *Carter v. McGrady*, 292 F.3d 152, 157-58 (3d Cir. 2002) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).  Here, the Court begins with the third element – causation.

---

[3]    Presumably referring to his Second Amended Complaint, Plaintiff states he has "sworn affidavits properly before the court" (D.I. 241 at 1) but fails to identify or otherwise describe their contents.  The only other "facts" that Plaintiff raised in his opposition are irrelevant to this lawsuit – namely, the Inmate Reference Manual.  (D.I. 241, Exs. 1 & 2).

6

### A.    Causation

Even assuming that Plaintiff engaged in constitutionally protected activities (which State Defendants dispute), Plaintiff has failed to come forward with a "scintilla of evidence" that his alleged constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *Anderson*, 477 U.S. at 252. "The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Price v. Pierce*, C.A. No. 16-831-CFC, 2019 WL 156932, at *4 (D. Del. Jan. 9, 2019) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

First, the temporal proximity between Plaintiff's alleged protected activities (sometime in February or March 2017)[4] and Defendant Rash's search of Plaintiff's prison cell (June 16, 2017) is not so close as to be "unusually suggestive" that the protected activities were a substantial or motivating factor in the decision to discipline him. *See DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (three-month gap between protected activity and adverse action "not so close as to be unusually suggestive"); *Cessna v. Lewis*, No. 3:14-CV-0361, 2015 WL 1299733, at *7 (M.D. Pa. Mar. 23, 2015) ("Courts have rebuffed efforts to infer causation from temporal proximity when a span of weeks or months separated the constitutionally protected conduct from the alleged acts of retaliation." (collecting cases)); *cf. Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (finding sufficient temporal proximity where "only a few hours elapsed" between protected activity and adverse action). To the extent that Defendant Phelps's alleged threat evidenced an intent to retaliate against Plaintiff, even Plaintiff admits that the threat and search were not "close in time."

---

[4]    Although unclear, Plaintiff appears to assert that he engaged in two "protected activities" – namely, (1) reaching out to Captain Burton via the unnamed laundry workers or Ms. Rainey and (2) contacting the Deputy Warden Scarborough via Sergeant Demby. (*See* D.I. 68 at 8-9).

(Fatir Dep. at 110:17-20). The temporal proximity between Defendant Phelps's purported threat and Defendant Rash's cell search is not "unusually suggestive" of anything.

Second, Plaintiff has not provided any evidence of "a pattern of antagonism coupled with timing" to suggest a causal link. *Price*, 2019 WL 156932, at *4; *see also Dawley v. Erie Indem. Co.*, 100 F. App'x 877, 881 (3d Cir. 2004) ("Rule 56 does not oblige a district court to scour the entire record to find a factual dispute."). Significantly, Plaintiff conceded during his deposition that he "didn't have no beef" with Defendant Phelps before the alleged threat. (Fatir Dep. at 50:13-52:15). Plaintiff further contradicted allegations in his Second Amended Complaint that Defendant Phelps threatened "to get plaintiff" (D.I. 68 at 8) when he conceded at his deposition that Defendant Phelps "didn't tell me I'm going to get you, but he was pissed." (Fatir Dep. at 74:9-75:3). And even without these concessions, Plaintiff's unsupported allegations and self-serving deposition testimony are insufficient to survive summary judgment. *See Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 172 n.3 (3d Cir. 2014) ("In opposing a motion for summary judgment, the nonmovant may not rely on his pleadings alone, but must provide evidence that demonstrates a genuine issue of fact for trial." (citing Rules 56(c) & (e)).

Because Plaintiff has failed to establish a genuine issue of material fact as to causation on his retaliation claim, summary judgment should be granted in favor of the State Defendants. *See Stringer v. The Pittsburgh Police*, 408 F. App'x 578, 579-81 (3d Cir. 2011) (affirming summary judgment for defendant where *pro se* plaintiff "did not submit an affidavit setting forth his own version of events, as even pro se prisoners are expected to do").

### B.     Same Decision Defense

Even if Plaintiff had established a *prima facie* case of retaliation, Plaintiff's claims would nevertheless still fail under the same decision defense because State Defendants have proven that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.  "In general, 'most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence' because courts afford prison officials 'great deference' in the context of prison disciplinary proceedings." *Whitehead v. Wetzel*, 720 F. App'x 657, 663 (3d Cir. 2017) (quoting *Watson*, 834 F.3d at 425). Courts are directed to consider the "quantum of evidence" to determine whether the misconduct is "clear and overt" such that no genuine issue of material fact exists that the misconduct citation was reasonably related to a legitimate penological interest, and the prisoner would have been disciplined notwithstanding the alleged protected activity.  *See Watson*, 834 F.3d at 425; *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002); *see also Price*, 2019 WL 156932, at *4 ("Where the prisoner is found guilty of the charges in a purportedly retaliatory misconduct report after a disciplinary hearing, the finding of guilt is considered strong evidence that the misconduct report was issued for a legitimate penological reason.").  Plaintiff has introduced no evidence to undermine the State Defendants' showing that the same decision would have been made regardless of Plaintiff's conduct.

State Defendants provided a statement of facts, which Plaintiff did not meaningfully dispute,[5] indicating that Defendant Rash selected Plaintiff's cell for the June 2017 search

---

[5]     Because *pro se* litigants are not exempt from procedural rules, State Defendants' statement of the facts can be deemed undisputed pursuant to Rule 56(e)(2) because Plaintiff failed to properly address them.  *Jones v. Sec'y Pennsylvania Dep't of Corr.*, 589 F. App'x 591, 593 (3d Cir. 2014) (stating *pro se* litigants are "not exempt from procedural rules or the consequences of failing to comply with them"); *Fladger v. Hicks*, No. 19-18867 (SDW-

randomly, independently and without direction from Defendant Phelps. (SOF ¶¶ 24 & 25; *see also* D.I. 88 ¶¶ 6 & 14; D.I. 90 ¶ 15)). Plaintiff does not dispute that he had red pens, sticky notes and highlighters in his prison cell when his cell was searched. (*See* Fatir Dep. at 44:1-45:19). Nor does Plaintiff dispute that, at all relevant times, red pens, sticky notes and highlighters were not sold at the JTVCC prison commissary and were, in fact, prohibited from prison cells. (SOF ¶¶ 29 & 30; D.I. 90 ¶ 2; D.I. 88 ¶ 2). Defendant Rash explained that JTVCC bans highlighters to reduce vandalism (*e.g.*, gang-related graffiti) and bans red pens because JTVCC Lieutenants used red pens for official prison business (*e.g.*, logbook signatures). (Rash Decl. ¶¶ 10-11). JTVCC held a disciplinary hearing for Plaintiff, where he and other witnesses provided statements. (Disciplinary Report at A048-56). After the hearing, the JTVCC found Plaintiff guilty of various misconducts, including Receiving Stolen Property, Failing to Obey an Order, Lying and Possession of Non-Dangerous Contraband, which JTVCC upheld on appeal. (*See id*. at A049-51). None of this is disputed – let alone with the evidence necessary to oppose summary judgment.

State Defendants have therefore met their burden of proving that they would have "made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. The JTVCC had a legitimate penological interest in reducing vandalism and "deterring the possession of prison contraband." *Price*, 2019 WL 156932, at \*4. And considering the foregoing "quantum of the evidence," the Court finds that Plaintiff's possession of contraband in his cell was sufficiently "clear and overt" such that no genuine issue of material fact exists as to whether Plaintiff would have been disciplined notwithstanding the alleged protected activity. *See Carter*, 292 F.3d at 159 (finding that prisoner's

---

ESK), 2023 WL 372827, at \*4 (D.N.J. Jan. 23, 2023) (considering facts undisputed where *pro se* plaintiff failed to properly address defendant's assertions of fact).

retention of stolen property in jail cell "clear and overt"); *Price*, 2019 WL 156932, at *4 (finding that prisoner's possession of prohibited cell phone sufficiently "clear and overt"). Summary judgment in favor of the State Defendants is warranted on this independent basis as well.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the State Defendants' motion for summary judgment (D.I. 236) be GRANTED.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: August 6, 2026

_____
UNITED STATES MAGISTRATE JUDGE

11